# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| PA+HFINDER, LLC d/b/a IMAGINE EARLY EDUCATION AND CHILDCARE and IC US PROPERTIES 1, LLC, | Case No. _____ |
| Plaintiffs, | |
| v. | |
| THE ACADEMY AT JULINGTON CREEK, LLC; ARTFUL ENTERPRISES, LLC; JACKSONVILLE ACADEMY HOLDINGS, LLC; SPYGLASS PROPERTY HOLDINGS, LLC; RDL PROPERTIES OF NORTH FLORIDA, LLC; and LUCINDA CHAPIN, | **COMPLAINT** |
| Defendants. | |

Plaintiffs Pa+hfinder, LLC d/b/a Imagine Early Education and Childcare ("Pa+hfinder") and IC US Properties 1, LLC (collectively, "Plaintiffs"), for their Complaint against Defendants Lucinda Chapin, The Academy at Julington Creek, LLC, Artful Enterprises, LLC, Jacksonville Academy Holdings, LLC, Spyglass Property Holdings, LLC, and RDL Properties of North Florida, LLC (collectively, "Defendants"), state and allege as follows:

## NATURE OF THE ACTION

1.      Pa+hfinder, LLC d/b/a Imagine Early Education and Childcare operates a series of industry-leading childcare and early childhood education centers throughout the south-central United States in Texas, Oklahoma, and Colorado.  Looking to expand Pa+hfinder's business into Florida, Plaintiffs negotiated and signed a letter of intent on March 17, 2022, and an Asset Purchase Agreement effective June 28, 2022 ("APA"), along with several other related agreements, to acquire two similar centers owned through various business entities by Defendant Lucinda Chapin.

2.      The APA contemplated a Closing on the transactions within ten (10) business days of satisfaction of the parties' conditions necessary to consummate the transactions.  Defendants specifically agreed to provide "full and free access" and a right to inspect all of the Purchased Assets, properties, books and records, etc., relating to the Business and to use "reasonable best efforts" to take such actions as necessary to expeditiously satisfy the closing conditions. The parties set an "Outside Date" of September 30, 2022, after which, barring a breach by the party seeking termination, the parties would have the ability to unilaterally terminate the APA.  After executing the APA, it became evident that Ms. Chapin had, for some reason, changed her mind about the transaction and proceeded to take actions that delayed, obstructed and otherwise undermined the ability of the parties to satisfy the pre-closing

2

conditions expeditiously as required.  The culmination of Defendants' conduct led to Defendants' insistence that closing be postponed until the very last day before the purchase agreements would permit Defendants to abort the transaction.

3.     Defendants had vastly underinsured the real property that was part of the parties' agreement.  Nevertheless, Plaintiffs had obtained insurance commitments (not bound) for an appropriate amount of insurance. This normally would not have been an issue, but then Hurricane Ian struck.  The storm caused Plaintiffs' insurance certificates to be withdrawn and an industry-wide moratorium imposed.  This rendered Plaintiffs' procurement of additional coverage impossible before the Outside Date of the purchase agreements.   Refusing Plaintiffs' efforts to find a solution in good faith, Defendants contacted Plaintiffs on September 30, 2022—a mere two minutes after the effective time of the Outside Date—purporting to unilaterally declare the transaction null and void, in violation of the parties' agreement.

4.     Defendants' attempt to terminate the transaction violated their express contractual obligations to take such actions as were necessary to expeditiously satisfy the closing conditions as well as their implied obligations to act in good faith and to deal fairly in the consummation of the transaction. Plaintiffs bring this suit to compel specific performance of that transaction. Alternatively, Plaintiffs seek to recoup the funds expended in furtherance of

its efforts to bring the parties' agreement to close and reliance that Defendants would work in good faith to do the same.

## THE PARTIES

5.     Plaintiff Pa+hfinder, LLC d/b/a Imagine Early Education and Childcare is a limited liability company organized under the laws of the State of Delaware.  As explained below in Paragraphs 6–9, Plaintiff Pa+hfinder is a citizen of Australia, Canada, Texas, New Jersey, and Virginia.

6.     Plaintiff Pa+hfinder has four members: (i) Queensland Investments II, LLC, which is a citizen of Australia and Canada; (ii) Lasco Investments, LLC, which is a citizen of Texas; (iii) Shaydon Investments, LLC, which is a citizen of Texas; and (iv) Starboard Tack Capital, LLC, which is a citizen of New Jersey and Virginia.

7.     Queensland Investments II, LLC is a limited liability company organized under the laws of the State of Delaware and a member holding a 66.9% interest in Pa+hfinder, LLC.  Queensland Investments II, LLC is wholly owned by Queensland Sands Investments US, LLC, a limited liability company that is also organized under the laws of the State of Delaware and is itself held by three owners: Rosalind Corporate Party Ltd., an Australian limited company owned by Brent Freeman, an Australian citizen; Imagine Education Australia Party Ltd., an Australian limited company, which is owned by Brent

Freeman and William Adler, an individual domiciled in Australia; and Edmund Groves, a Canadian citizen.

8.     Lasco Investments, LLC is a limited liability company organized under the laws of the State of Texas and a member holding a 25.8% interest in Pa+hfinder, LLC.  Lasco Investments, LLC is owned by Lasco Investments, LP Entities and Sharon Haydon, both Texas citizens.  Each general and limited partner of Lasco Investments, LP Entities is a citizen of the State of Texas.

9.     Shaydon Investments, LLC is a limited liability company organized under the laws of the State of Texas and a member holding a 1.4% interest in Pa+hfinder, LLC.  Shaydon Investments, LLC is wholly owned by Sharon Haydon, a Texas citizen.

10.     Starboard Tack Capital, LLC is a limited liability company organized under the laws of the State of Delaware and a member holding a 5.9% interest in Pa+hfinder, LLC.  Starboard Tack Capital, LLC is jointly owned by two entities: Great Point Holdings, LLC, a limited liability company organized under the laws of the State of New Jersey and itself jointly owned by Tristram Collins and Jennifer Collins, both New Jersey citizens; and ES Ventures, LLC, a limited liability company organized under the laws of the state of Virginia and wholly owned by Steven Schneider, a Virginia citizen.

11.     Plaintiff IC US Properties 1, LLC, is a wholly-owned subsidiary of Plaintiff Pa+finder.  Plaintiff IC US Properties 1, LLC, is a citizen of Australia,

Canada, Texas, New Jersey, and Virginia by virtue of its ownership by Plaintiff Pa+hfinder.

12.    Defendant Lucinda Chapin is Chief Executive Officer of Jacksonville Academy Holdings, LLC, and an individual domiciled in Jacksonville, Florida.  Ms. Chapin owns a supermajority of the issued and outstanding membership interests of Defendant Jacksonville Academy Holdings, LLC.  The remaining minority-interest member is also domiciled in the State of Florida.

13.    Defendant Jacksonville Academy Holdings, LLC, is a limited liability company organized under the laws of the State of Florida.  It is the sole member of Defendant The Academy at Julington Creek, LLC; Defendant Artful Enterprises, LLC; Defendant RDL Properties of North Florida, LLC; and Defendant Spyglass Property Holdings, LLC, owning all of the issued and outstanding membership interests of those entities.  Defendant Jacksonville Academy Holdings, LLC is a citizen of the State of Florida by virtue of the citizenship of Defendant Lucinda Chapin and its remaining minority-interest member.

14.    Defendant The Academy at Julington Creek, LLC, is a limited liability company organized under the laws of the State of Florida.  It is engaged in the business of owning and operating a childcare and early childhood education center known as Deerwood Academy St. John's

("Deerwood St. Johns" or the "Academy Business"), located at 990 Flora Branch Blvd, St. Johns, FL 32259.  Defendant The Academy at Julington Creek, LLC is a citizen of the State of Florida by virtue of the citizenship of Defendant Jacksonville Academy Holdings, LLC.

15.     Defendant Artful Enterprises, LLC, is a limited liability company organized under the laws of the State of Florida.  It is engaged in the business of owning and operating a childcare and early education center known as Deerwood Academy Town Center ("Deerwood Town Center" or the "AEL Business"), located at 7575 Centurion Pkwy, Jacksonville, FL 32256 (together with the Academy Business, "Deerwood Academy").  Defendant Artful Enterprises, LLC, is a citizen of the State of Florida by virtue of the citizenship of Defendant Jacksonville Academy Holdings, LLC.

16.     Defendant RDL Properties of North Florida, LLC, is a limited liability company organized under the laws of the State of Florida.  It is the owner of certain real estate located at 990 Flora Branch Blvd., St. John's, FL 32259, upon which Defendant The Academy at Julington Creek, LLC, operates Deerwood St. Johns.  Defendant RDL Properties of North Florida, LLC, is a citizen of the State of Florida by virtue of the citizenship of all of its members.

17.     Defendant Spyglass Property Holdings, LLC, is a limited liability company organized under the laws of the State of Florida.  It is the owner of certain real estate located at 7575 Centurion Parkway, Jacksonville, FL 32256,

upon which Defendant Artful Enterprises, LLC, operates Deerwood Town Center.  Defendant Spyglass Property Holdings, LLC, is a citizen of the State of Florida by virtue of the citizenship of all of its members.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 in value.

19.    This Court has personal jurisdiction over the Defendants in this lawsuit because Defendants are citizens of the State of Florida that transact the entirety of their business within the State.  Defendants further consented to the jurisdiction of this Court in § 9.5 of the Asset Purchase Agreement.

20.    Venue is proper as the events giving rise to this lawsuit took place in St. Johns County and Duval County, Florida, which fall within the United States District Court for the Middle District of Florida.  In addition, the parties agreed to submit any dispute arising out of the transaction between them to this Court and expressly and irrevocably waived any objection to such venue in § 9.5 of the Asset Purchase Agreement.

## FACTUAL ALLEGATIONS

I.    **Pa+hfinder Contracts to Acquire Deerwood Academy.**

21.    On March 17, 2022, Pa+hfinder sent Defendants a "Letter of Intent for Acquisition of Deerwood Academy Childcare Business and Related Real

Property" ("LOI").    In that document, the parties memorialized their agreement in principle for Plaintiffs to acquire certain assets and real property comprising Defendants' business known as Deerwood Academy.  A true and correct copy of the Letter of Intent has been attached as **Exhibit 1 (Letter of Intent)**.

22.    In furtherance of the understanding expressed in the Letter of Intent, the parties entered into the APA on June 28, 2022.  Under the APA, Pa+hfinder agreed to buy, and Defendants agreed to sell, substantially all of Defendants' assets comprising and used in connection with Deerwood Academy for a purchase price of $2,800,000.  The APA contemplated that, on the "Closing Date," Pa+hfinder would immediately transfer $2,000,000 by wire and issue to Defendants promissory notes for the remaining $800,000.  A true and correct copy of the Asset Purchase Agreement has been attached as **Exhibit 2 (Asset Purchase Agreement)**.

23.    In addition, the parties entered into two Real Estate Purchase and Sale Agreements ("REPAs").    Under the REPAs, Pa+hfinder (through its subsidiary, IC US Properties 1, LLC) agreed to buy, and Defendants agreed to sell, the real estate upon which Deerwood Academy is situated for a combined purchase price of $12,000,000.  A true and correct copy of the Real Estate Purchase and Sale Agreements have been attached as **Exhibits 3 (Deerwood Town Center REPA) and 4 (Deerwood St. John's REPA)**.

9

24.     Under the terms of all three agreements, the APA was conditioned upon the simultaneous closing of the REPAs; the REPAs were likewise conditioned upon the simultaneous closing of the APA.  (APA §§ 6.2(b)–(g), 6.3(b)–(f); REPA § 9(A)(ii), (B)(ii)).

25.     The transactions contemplated by the APA and REPAs provided for a Closing to take place within ten business days after the later of satisfaction or waiver of all conditions under either agreement or any other date mutually agreed-to by the parties.  (APA § 2.5, REPA § 7(A)).

26.     Section 7.1 of the APA contemplated an "Outside Date" of 5 p.m. EDT on September 30, 2022, at which time either party to the transaction could terminate the agreement upon the non-occurrence of certain pre-closing conditions.

27.     The APA permitted the parties to terminate their agreement only under limited circumstances.  Section 7.1 provides, in relevant part:

> Termination.  This Agreement may be terminated at any time prior to the Closing:
>
> *       *       *
>
> (c)     by the Seller Parties [Defendants] by written notice to Buyer [Plaintiffs] if: (i) no Seller Party is then in material breach of any provision of this Agreement and there has been a breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by Buyer pursuant to this Agreement that would give rise to the failure of any of the conditions specified in Article 6 (other than pursuant

> to Section 6.2(c)) and such breach, inaccuracy or
> failure has not been cured by Buyer within thirty (30)
> days of Buyer's receipt of written notice of such breach
> from the Seller Parties; or (ii) any of the conditions set
> forth in Sections 6.1 or 6.3 shall not have been fulfilled
> by 5 pm EDT on the Outside Date, unless such failure
> shall be due to the failure of any Seller Party to
> perform or comply with any of the covenants,
> agreements or conditions hereof to be performed or
> complied with by it prior to the Closing . . . .

Section 6.3 of the APA lays out the conditions to Defendants' obligations under the APA.

28.   The parties expressly acknowledged in their Letter of Intent that Plaintiffs would "incur significant expense in connection with its due diligence review and preparation and negotiation of the Asset Purchase Agreement." (LOI § 6).

29.   Defendants agreed to "compensate and reimburse [Plaintiffs] . . . for, all damages, costs, expenses, losses, claims, demands, liabilities and/or obligations, including, without limitation, reasonable fees and disbursements of counsel (collectively, "Damages"), to the extent arising from, relating to, or incidental to . . . (ii) any breach of or failure to perform or observe any covenant or other agreement made by any Seller Party in this Agreement." (APA § 5.2).

## II.    Defendants' Stonewalling Pushes the Closing Date to the Last Possible Day by Which to Consummate the Transaction.

### A.    Defendants Prohibit Direct Communication with Their Personnel and Key Business Partners.

30.    One requirement the APA imposed upon Defendants was for Defendants to provide to Plaintiffs full and free access to the assets being purchased and to information necessary for Plaintiffs to satisfy their closing conditions and successfully bring the transaction to close.  Section 8.2 of the APA provides, in relevant part:

> Access to Information.  From the date hereof until Closing or the earlier termination of this Agreement, each Seller shall, and Holdings and Member will cause each Seller to, (a) provide Buyer with full and free access to and the right to inspect all of the Purchased Assets, Real Property, properties, assets, premises, books and records, Contracts and other documents and data related to the Business; and (b) furnish Buyer with such financial, operating and other data and information related to the Business as Buyer may reasonably request.

31.    In July 2022, however, Defendants demanded that Plaintiffs no longer contact them about anything related to the sale of Deerwood Academy. Instead, they required that all future communication go through legal counsel.

32.    Defendants further demanded that Plaintiffs not directly contact any of their employees or vendors, and instead communicate indirectly through Defendants' legal counsel only.

33.    Without direct access to the selling parties and key business partners, Plaintiffs lacked adequate access to information pertaining to the Deerwood Academy centers that Defendants had agreed to sell to Plaintiffs, as explained in more detail below.

34.    The lack of adequate access to information critical to Plaintiffs' acquisition of Deerwood Academy severely hindered their ability to fulfill their obligations under the APA.

35.    For instance, one or more of Plaintiffs' representatives attempted to visit the Deerwood Academy sites in early August 2022 to coordinate the inspections required to obtain licensure with the Florida Department of Children and Families ("DCF") and ensure both Deerwood Academy sites were ready and capable of passing.  Passing all applicable inspections was crucial for Plaintiffs' successful and lawful operation of Deerwood Academy as a childcare and early education facility upon Plaintiffs' acquisition of the business.

36.    Nevertheless, Defendants denied Plaintiffs' representatives access to the facility.

37.    In the alternative to a site visit, Plaintiffs requested a call with the site managers of both Deerwood Academy centers to talk through the relevant checklists and prepare for the DCF inspections.  Defendants denied this request, too.

38.     In preparing for the transition of operations and bringing the transaction to close, Plaintiffs further sought to contact certain vendors engaged by Deerwood Academy to fulfill Plaintiffs' closing conditions and ensure a continuity of services upon taking control of the sites' operations. These efforts, too, were ultimately stymied by Defendants.

39.     For instance, on September 2, 2022 (after being forbidden to communicate directly with any of Defendants' vendors), Plaintiffs forwarded an email exchange Plaintiffs had received from a representative of one of Defendants' vendors, ProCare.   The communication from ProCare's representative to Plaintiffs indicated that Defendants had not followed up with ProCare's multiple attempts to get in touch with Defendants to initiate an account transfer that was a critical and necessary step to ensure continuity of services following the change in ownership.

40.     Noting that Plaintiffs were under "strict instructions" not to communicate directly with any of Defendants' vendors, Plaintiffs asked Defendants, through their legal counsel, to confirm that there were no issues with what they had received from ProCare and were ready to transfer title to the account as part of closing the transaction.  Plaintiffs further communicated the need to promptly finalize this transition with the vendor.

41.     Defendants did not respond to Plaintiffs' inquiries about their vendors' communications.

42.     ProCare followed up again with both Plaintiffs and Defendants in an email on September 7, 2022, indicating Defendants had still not responded to the vendor's inquiries.  That same day, Plaintiffs requested permission to respond.  Defendants did not give that permission.

43.     Defendants' communications embargo, coupled with Defendants general lack of responsiveness, further hindered Plaintiffs' ability to transition relationships and services with key business partners upon Plaintiffs' acquisition of Deerwood Academy.

**B.      Defendants Fail to Timely Disclose Key Financial Documents.**

44.     Section 8.2 of the APA also required Defendants to provide updated financial documents relevant to the closing of the APA and REPAs.

45.     On numerous occasions prior to the Outside Date, Plaintiffs requested documents reflecting Defendants' updated financial status through June 2022.

46.     Defendants failed to provide updated financial documents beyond April 2022 despite repeated requests from Plaintiffs.

47.     Specifically, on September 7, 2022, Plaintiffs reiterated their request that Defendants provide their financial documents through June 30, 2022.

48.    Defendants did not disclose any of the financial documents Plaintiffs had requested for months until September 22, 2022—a mere 8 days before the Outside Date.  Even that disclosure, however, failed to provide Plaintiffs with the financials for each of the Deerwood Academy sites as required by the parties' agreement.  These documents were not in the same format, and did not include the same items, as the earlier records Defendants had previously provided, such that it was impossible for Plaintiffs and their lenders to compare and track the progress of Deerwood Academy's financials through that additional period.

**C.    Defendants Fail to Expeditiously Complete Licensing Requirements and Correct Deficiencies.**

49.    Section 8.5 of the APA provides:

> <u>Closing Conditions</u>.  Each party shall use reasonable best efforts to take such actions as are necessary to expeditiously satisfy the closing conditions set forth in Article 6 hereof, including without limitation giving all notices to, and obtaining all consents from, all required third parties.

50.    The regulatory body overseeing childcare and early childhood education centers like Deerwood Academy—DCF—requires that all facilities satisfy certain inspection criteria to obtain a license to operate in the State of Florida.

51.     Further, DCF requires that any Florida childcare center issue notice to parents and guardians of children enrolled in the site at least seven days prior to any change in control or ownership of the organization.

52.     Beginning on or around July 27, 2022, Plaintiffs communicated earnestly and worked diligently to secure fire and licensing inspections for both Deerwood facilities.  These inspections were challenging to schedule due to difficulties in receiving responses from the inspecting authorities and limited scheduling availability.

53.     Defendants' response was to reiterate its requirement that all future communication be made through legal counsel.

54.     On July 28, 2022, Plaintiffs informed Defendants through counsel of their many efforts to coordinate with local authorities on the inspection and a list of outstanding items that needed to be resolved prior to their completion.

55.     Despite being prohibited from visiting the Deerwood Academy sites or communicating with their managers, Plaintiffs tried to make progress on the licensing requirements by scheduling the DCF inspections to take place the first and second weeks of August 2022—August 4 or 5 and August 8 or 9 for Deerwood Academy Town Center and St. John's centers, respectively.

56.     Prior to the Town Center DCF inspection, DCF required that it first receive evidence of a satisfactory fire inspection.  Defendants were to schedule this, but the inspection did not occur until August 25, 2022.

17

57.     Plaintiffs followed up with Defendants in an email on August 1, 2022, in which Plaintiffs communicated their understanding of the seven-day notice requirement, the impact this would have on Plaintiffs' transition communications with staff, and the need for the inspections to take place promptly so the timelines of these actions could proceed prior to close.

58.     In its August 1 email, Plaintiffs further outlined a number of outstanding items that continued to be unresolved and required Defendants' attention.  Plaintiffs' communication also noted that because Defendants were in control of the centers' operations and had prohibited Plaintiffs from directly working with Deerwood Academy staff, it would fall on Defendants to coordinate the logistics for both inspections and Deerwood Academy's preparation for the same.  Since the parties had planned to close on August 12, 2022, Plaintiffs informed Defendants that they would need to issue the change-in-control notice no later than August 5.   Plaintiffs communicated to Defendants the importance of promptly completing all required inspections so the timelines of these actions could proceed.

59.     Defendants did not respond to Plaintiffs' communications until August 3, 2022.  Recognizing a "delay" in their communication, Defendants informed Plaintiffs that DCF would not perform its licensing inspection until having received proof of a passed fire inspection.  Defendants' August 3

18

communication did not respond to any of the additional items raised by Plaintiffs' prior communications.

60.     Plaintiffs followed up with Defendants the next day on August 4, inquiring whether Defendants had been successful in scheduling the sites' fire inspections in light of DCF's requirement that they be completed prior to conducting its licensing inspection.

61.     Defendants did not directly respond to Plaintiffs' inquiries about the status of the fire and licensing inspections.  On August 5, however, Defendants' legal counsel proclaimed that neither an August 12 nor August 18 closing were possible.  Rather than holding to the inspection dates to further the pre-closing licensure conditions, however, Defendants also cancelled both inspections scheduled to take place in the coming week.

62.     Plaintiffs strongly objected to the cancellation of the inspections and urged Defendants to hold on to the scheduled inspection dates, noting that Plaintiffs had worked hard to get them scheduled.  Plaintiffs expressed their concern that same day that trying to reschedule would have a significant impact on the pre-closing timeline and left little room to make required corrections and schedule follow-up inspections, if necessary.  Plaintiffs stated that it had every desire to keep moving forward with the transition of operations, but that Defendants' cancellation of the inspections felt like a step backwards.

63.     But for the cancellation of the fire and licensing inspections, Plaintiffs were ready, willing, and able to close at any time in the second half of August or anytime in September 2022.

64.     Following Defendants' unilateral cancellation of the fire and licensing inspections, the parties attempted to schedule a closing in early September.

65.     Defendants were also unwilling to provide the required seven-day notice to parents and guardians of Deerwood Academy prior to closing even though such notice was *required* prior to a change in control.

66.     At Defendants' request, and to facilitate vacations of Defendant Chapin and Defendants' counsel, the parties proceeded to set the new closing date for September 23, 2022.  In an email to Defendants on August 30, Plaintiffs pointed out that this would require the parties to close into escrow on September 15 or 16 to allow for the seven-days' required change-in-control notice to Deerwood Academy parents and guardians.  Plaintiffs expressed their optimism for concluding the transaction, observing that at that point there were not many remaining items necessary to close the APA into escrow.

67.     After selecting a new closing date of September 23, Defendants then required that closing occur on September 29 or 30, instead, to accommodate Defendant Chapin's vacation, just days before a multi-million dollar sale of her businesses.

68.     Plaintiffs stated their concern that pushing closing to September 29 or 30 would leave little to no room between closing and the Outside Date and inhibit the parties' ability to react to last-minute changes or conditions. Plaintiffs proposed to amend the APA to provide for an Outside Date in October to provide room to bring the transactions to close.

69.     Defendants did not respond until September 6.  Even though Defendants had now twice asked to push back the Closing Date, they communicated through legal counsel that Defendants "d[id] not want to amend the APA to extend the outside date."

70.     Defendants gave no reason at this time for not extending the Outside Date commensurate with their two earlier demands to postpone closing.

71.     Plaintiffs followed up that same day.  Eager to complete the transaction but stymied by Defendants continued delay and lack of cooperation, Plaintiffs pointed out that because Defendants would not agree to extend the Outside Date, and "virtually everything is in [Defendants'] hands to get to closing," they would have to rely on a Closing Date of no later than September 26.

72.     The next day, on September 7, Plaintiffs were informed that Defendants' legal counsel would be on vacation starting September 8 through September 18 with limited access to email and cell phone connectivity.  With

Defendants' requirement that all communication between the parties take place through their attorneys, Plaintiffs' ability to coordinate with the seller parties on pre-closing requirements was severely hamstrung. And because Defendants' counsel did not include any of her partners in this transaction while she was away, Plaintiffs were unable to communicate with their counterparties at all in the days leading up to close.

73.   Upon information and belief, Defendant Lucinda Chapin also went on vacation on or about September 11 to 18, 2022.

74.   In another effort to move promptly towards closing, Plaintiffs reiterated their significant concerns with waiting until the end of September to close the transaction in an email dated September 7. And in yet another effort to accommodate the Defendants' desired closing date while ensuring adequate time to complete the transaction, Plaintiffs proposed to revise the agreement governing to the escrow closing to provide that once the parties had closed into escrow, the only option to terminate the purchase agreements was by mutual agreement. This amendment, Plaintiffs emphasized, would give both parties comfort that the other would not simply walk away from the sale at the last minute.

75.   Defendants rejected Plaintiffs' second request to reinforce the parties' commitment to closing in a response dated September 8, stating only that Defendants "[d]id not want to revise the escrow terms."

76.     On September 13, 2022, Plaintiffs noted in an email to Defendants that Deerwood Academy St. John's had passed its licensure inspection, but DCF could not issue its license until the issues with the fire inspection were corrected.  Plaintiffs requested an update and estimated completion date.

77.     Plaintiffs, at various times, indicated their understanding that the licensure corrections would be completed the week of September 16 and that DCF would approve the facilities' licenses without waiting for the completion of the fire corrections.  Defendants failed to confirm this procedure with DCF, and Plaintiffs later learned that was not the case.

78.     During the week of September 19, it became clear that Defendants would not complete the fire inspection corrections to remedy those deficiencies by the September 23 deadline.   This presented a conundrum: Without Defendants having remedied the inspection deficiencies, Pa+hfinder could not obtain its DCF license; Defendants, however, indicated on September 20 that they refused to provide the seven-days' required notice to parents and guardians until Pa+hfinder had obtained its DCF license.  Defendants further informed Plaintiffs that Defendants no longer wished to proceed with the escrow closing.

79.     Without proposing a solution to the outstanding fire inspection corrections, Defendants proposed a September 26 announcement of its change of ownership.

80.     Contrary to Defendants' assertions, however, a September 26 announcement would not enable the parties to comply with DCF's seven-day notice rule within the Outside Date.  Seven days following September 26 would have been October 3.  October 3 fell beyond the Outside Date defined by the APA.  Thus, Defendants' own proposal itself rendered a pre-closing condition impossible.

81.     Further, Defendants' proposal was premised on Pa+hfinder receiving its DCF approval by September 26.  Because of the conditions and restraints placed on Plaintiffs' ability to coordinate and implement corrections of the outstanding fire inspection issues, however, this placed Pa+hfinder's DCF approval exclusively within the control of Defendants.

82.     With Defendants unwilling to budge, Plaintiffs responded the same day, on September 20, informing that Plaintiffs understood Defendants' position, but that it was entirely within Defendants' control, not Plaintiffs'.  Plaintiffs again reiterated their hope that Defendant would promptly make arrangements to remedy the outstanding fire inspection deficiencies, as was necessary to close the transaction and consummate the sale of Deerwood Academy under the APA and REPAs.

**D.     Defendants Demand, and Plaintiffs Waive, Additional Concessions to Bring the Transaction to Close.**

83.     Recognizing that it had created an impossible compliance situation, Defendants suddenly changed their position and on September 22, informed Plaintiffs that Defendants would provide the required change-of-control notice on September 23, 2022—but only if Plaintiffs agreed to waive certain closing conditions beforehand.  In a good faith effort to bring the transaction to close before the parties' September 30 Outside Date, Plaintiffs agreed to Defendants' additional demands.  A true and correct copy of the "Closing Condition Waiver" is attached hereto as **Exhibit 5 (Closing Condition Waiver)**.

84.     Plaintiffs contacted Defendants on September 22 seeking a transition plan and benefits list in order to ensure it was able to offer employment and ensure continuity of the Deerwood Academy staff post-close. In fact, one of Plaintiffs' closing conditions was to provide for the transition of each transferring employee with commensurate salary and benefits, effective as of the closing date.  (*See generally* APA § 8.10).  Plaintiff had previously requested this information but had yet to receive a response.

85.     The REPAs were completed and finalized on September 22, 2022. Plaintiffs sent those documents, along with closing instructions to the title company, on September 28.

86.     The parties signed the Closing Conditions Wavier on September 23.  The parties agreed the waiver would be held in escrow until Plaintiffs expressly confirmed that it was released and on the understanding that the parties entered into the agreement for the express and sole purpose of Defendants' agreement to send the seven-day change-of-control notice required by DCF that same day.

87.     Upon information and belief, Defendant Lucinda Chapin posted the required DCF notice on September 23, 2022.

## III.   Hurricane Ian Renders the Financing of Defendants' Vastly Underinsured Property Temporarily Impossible.

88.     Plaintiffs' supplying the purchase price was a condition to closing the APA and REPAs.  Plaintiffs' ability to finance the purchase price depended on obtaining proper insurance coverage on the Deerwood Academy properties.

89.     In conducting its due diligence, Plaintiffs learned that Defendants had significantly underinsured its properties by approximately $4.6 million— nearly half the amount of appropriate coverage.

90.     Well prior to the Outside Date, Plaintiffs had obtained new property insurance on both Deerwood Academy sites to facilitate closing the APA and REPAs.  The certificates for these policies had been issued, but the policies had not yet been bound.  Although Plaintiffs had not at that time secured a replacement wind insurance policy on the Deerwood Academy St.

John's site, they had obtained certificates of insurance from Defendants during the due diligence process and had been assured of the facilities' qualification for coverage.

91.     Hurricane Ian made landfall as a Category 4 storm on September 28, 2022.

92.     Due to the arrival of Hurricane Ian, the insurers set to issue the policies upon Plaintiffs' acquisition of Deerwood Academy imposed a moratorium on the issuance of all new policies and changes to existing policies on September 29, 2022.  Plaintiffs' insurer also withdrew its certificates of insurance as a result of the storm conditions and refused to bind the policies while the moratorium was in place.

93.     The insurance moratorium imposed as a result of Hurricane Ian rendered Plaintiffs' ability to obtain replacement insurance coverage for both Deerwood Academy properties impossible until the moratorium was lifted.

94.     Nevertheless, Plaintiffs undertook significant efforts on September 29 and 30 to find a solution and bring the transaction to close.  On September 29, Plaintiffs proposed that the parties address the problem posed by the insurance moratorium by simply adding Pa+hfinder as an additional insured on Defendants' existing policies until the moratorium was lifted several days later, when Plaintiffs would be able to obtain their own policies.  Upon information and belief, adding Pa+finder as an additional insured to

Defendants' existing insurance policies would not have affected Defendants' finances or liability.

95.     Defendants agreed to this proposal, but only on the new and unrelated condition that Plaintiffs employ Defendant Lucinda Chapin and her husband at their current salaries and provide them with full benefits through November 30, 2022.

96.     In order to evaluate the viability of this work-around to the insurance moratorium and enable the parties to close, Plaintiffs requested that Defendants provide a copy of their wind insurance policy.  Defendants were obligated to disclose all insurance policies during the due diligence period but did not.  Plaintiffs finally received a copy of Defendants' wind policy from Defendants' counsel on or about September 29 at approximately 4:08 p.m. EDT.

97.     Upon review of Defendants' insurance policies, Plaintiffs' lender determined that the policies were acceptable to close but-for their being so significantly underinsured.   To account for the underinsurance on the properties, Plaintiffs' lender had one condition: it required additional sums— the difference between Defendants' current coverage and the appropriate level of coverage—be held back in escrow to cover any potential loss until the moratorium was lifted shortly after close.  The rest of the purchase price would

be paid to Defendants on September 30, as planned; Plaintiffs expected the remainder to be received by Defendants by no later than Monday, October 3.

98.   Defendants responded, through their legal counsel, that Plaintiffs' proposed solution was no longer acceptable.

99.   Defendants did not provide a reason why Plaintiffs' proposal was no longer acceptable.  Instead, Defendants attempted to renegotiate the terms of the purchase including that (a) the $800,000 portion of the purchase price that was to be paid by promissory notes instead be paid in cash, not by note; (b) that Plaintiffs agree to keep Defendant Lucinda Chapin and her husband as employees at their current salaries and with benefits through the end of December 2022; and (c) that Plaintiffs agree to employ Deerwood Academy's COO at her current salary and benefits for six months after closing.

100.   The APA had never contemplated Defendant Lucinda Chapin's (or her husband's) continuation of salary and benefits as a condition to close the APA and REPAs.

101.   Under the LOI, the $800,000 portion of the purchase price to be paid by notes had initially been agreed by the parties to be an earn-out payment if Deerwood Academy met certain post-closing performance metrics. Plaintiffs had already made the concession to pay that amount as a note instead (no longer contingent upon the facilities' post-closing financial performance) during the negotiation of the APA.

102.   Plaintiffs was amenable to Defendants' counterproposal with the exception of the conversion of Plaintiffs' $800,000 closing payment to cash rather than the delivery of a note.  The financial structure of the sale—which had been finalized and agreed upon when the APA was signed months earlier, in late June—was predicated on the use of the notes.

103.   Upon information and belief, Defendants knew that Plaintiffs were not in a position to change the entire financial structure of the transaction a matter of hours before the expiration of the Outside Date.

104.   Plaintiffs reiterated to Defendants that the parties were only in this position because (a) the fire corrections had been delayed, (b) Defendants required that closing coincide with the September 30 Outside Date and refused to make closing any earlier date possible, and (c) Hurricane Ian had made it impossible to adapt to these drastically changed circumstances.

105.   Defendants did not contest Plaintiffs' characterization of the situation.

106.   Shortly thereafter, Defendants, through legal counsel, informed Plaintiffs that Defendants would not change any of their insurance policies and would not make any further concessions to account for the situation posed by Hurricane Ian.

107.   After rejecting Plaintiffs' two proposals, refusing to make any concessions to accommodate for the issues caused by Hurricane Ian, and

ignoring their own delays in bringing the transaction to close, Defendants stated they were, ostensibly, "prepared to close today on the terms previously agreed to."

108.   Per § 7.1 of the APA, the Outside Date upon which a party could elect to terminate the APA in certain circumstances was September 30, 2022, at 5:00 p.m. EDT.

## IV.   Defendants Purport to Unilaterally Terminate the Asset Purchase Agreement.

109.   At 5:02 p.m. EDT—a mere two minutes after the expiration of the Outside Date—Defendants' legal counsel sent an email purportedly declaring that Plaintiffs had failed to fund the transaction by the Outside Date and that, as a result, Defendants were electing to terminate the APA and REPAs under § 7.2 of the APA.

110.   Defendants' hasty attempt to invoke § 7.2 of the APA to terminate the APA and REPAs was ineffectual because their email communication failed to properly deliver notice to the required parties.  (APA § 9.6).

111.   Plaintiffs objected and disputed Defendants' contention that termination was permitted under the APA.  Specifically, Plaintiffs pointed out that Plaintiffs had been ready, willing, and able to close at any point in September but for (a) Deerwood Academy St. John's failed fire inspection; (b) Defendants' failure to correct the fire inspection deficiencies in a timely

manner; (c) Defendants' insistence on moving the Closing Date to September 30, 2022; and (d) Defendants' failure to timely provide financial statements required by Plaintiffs' lender.

112.   Plaintiffs reiterated that these conditions were solely due to the fault of Defendants and that Plaintiffs had tried many times over to accommodate Defendants' requests to close the transactions.

113.   But for Defendants' delays and failure to meet its own obligations, Plaintiffs were ready, willing, and able to close any time in September 2022.

114.   Defendants did not act in good faith or use reasonable best efforts to complete closing conditions and consummate the transaction on September 30, 2022, when they refused to agree to viable solutions to the problems caused by Hurricane Ian and instead demanded arbitrary and unreasonable requirements to any proposal advanced by Plaintiffs.

115.   Defendants did not provide a termination notice in accordance with the notice requirements of the APA until October 4, 2022.

116.   Plaintiffs were ready, willing, and able to close on October 5, 2022.

117.   Plaintiffs informed Defendants on October 5, 2022, that they continued to stand ready to close.

118.   Plaintiffs have incurred significant fees, costs, and expenses, and has expended time, resources, and energy related to its performance under the

32

APA and REPAs upon the reasonable expectation that Defendants would, in good faith, do the same.

## COUNT I
## Declaratory Judgment

119.   Plaintiffs restate and reallege Paragraphs 1–118 of the Complaint as if fully set forth herein.

120.   There exists a justiciable controversy between the parties to determine their respective rights, obligations, and duties under the APA and REPAs.

121.   The events giving rise to setting the Closing Date on September 30, 2022—the same day as the Outside Date—were due to the conduct of Defendants and not due to the conduct of Plaintiff.

122.   The conditions giving rise to Plaintiffs' inability to fund the transaction on September 30, 2022, were due to the pre-closing conduct of Defendants and not due to the conduct of Plaintiffs.

123.   The arrival of Hurricane Ian—and the insurance moratorium imposed as a result—was not reasonably foreseeable at the time the parties entered into the APA and REPAs.   No amount of foresight could have anticipated or guarded against it.

124.   Plaintiffs' duty to deliver the purchase price by the Outside Date was rendered objectively impossible by Defendants' pre-closing conduct and the conditions brought about by Hurricane Ian.

125.   Plaintiffs' duty to deliver the purchase price by the Outside Date was temporarily suspended under the doctrine of legal impossibility or impracticality.

126.   Defendants did not have cause to terminate the APA and REPAs under § 7.2 of the APA.

127.   Defendants breached their duties and obligations under the APA and REPAs by unilaterally terminating the APA and REPAs without meeting the requirements to do so under the APA.

128.   Defendants' conduct defeated Plaintiffs' reasonable expectations under the APA and REPAs, in violation of their duty of good faith and fair dealing.

## COUNT II
**Specific Performance**

129.   Plaintiffs restate and reallege Paragraphs 1–118 of the Complaint as if fully set forth herein.

130.   The APA and REPAs are valid and enforceable contracts.

131.   Defendants have breached the APA and REPAs by, among other things: failing to expeditiously schedule fire and licensing inspections for the

Deerwood Academy sites; failing to correct inspection deficiencies in a timely manner; failing to communicate with Plaintiffs and other third parties in a timely and effective manner to take the steps necessary to bring the APA and REPA to close; failing to provide Plaintiffs with full and free access to Defendants' facilities and financial information as requested and required; postponing closing until the Outside Date; failing to negotiate in good faith to find a solution to the situation posed by Hurricane Ian; and wrongfully asserting in bad faith that Plaintiffs had failed to fulfill a closing condition prior to the Outside Date.

132.   Plaintiffs fully performed all of their obligations under the APA and REPAs to date, and are ready willing, and able to consummate the transaction.

133.   Plaintiffs were ready, willing, and able to close the APA and REPAs at any time in September prior to the insurance moratorium that went into effect on September 29, 2022.

134.   Plaintiffs' performance under the APA was temporarily suspended by the conditions imposed by Hurricane Ian.

135.   Plaintiffs were ready, willing, and able to close the APA and REPAs on October 5, 2022.

136.   Plaintiffs remain ready, willing, and able to close the APA and REPAs.

137.   Plaintiffs have incurred additional fees, costs, and expenses, and has expended time, resources, and energy incident to seeking specific performance of the APA and REPAs.

138.   The businesses and real property sought to be acquired by Plaintiffs are unique and Plaintiffs cannot be adequately compensated by any remedy existing at law.

139.   The balance of equities in this case weigh in favor of Plaintiffs and compelling the consummation of the APA and REPAs.

140.   Plaintiffs are entitled to specific performance of the APA and REPAs.

141.   Plaintiffs are entitled to recoup fees, costs, and expenses related to the expenditure of time, resources, and energy incident to seeking specific performance of the APA and REPAs.

## COUNT III
### Breach of Contract

142.   Plaintiffs restates and realleges Paragraphs 1–118 of the Complaint as if fully set forth herein.

143.   This cause of action for damages for Defendants' breach of contract is brought in the alternative to Count II, above.

144.   The APA and REPAs are valid and enforceable contracts.

145.   Defendants have breached the APA and REPAs by, among other things: failing to expeditiously schedule fire and licensing inspections for the Deerwood Academy sites; failing to correct inspection deficiencies in a timely manner; failing to communicate with Plaintiffs and other third parties in a timely and effective manner to take the steps necessary to bring the APA and REPA to close; failing to provide Plaintiffs with full and free access to Defendants' facilities and financial information as requested and required; postponing closing until the Outside Date; failing to negotiate in good faith to find a solution to the situation posed by Hurricane Ian; and wrongfully asserting in bad faith that Plaintiffs had failed to fulfill a closing condition prior to the Outside Date.

146.   Plaintiffs fully performed all of their obligations under the APA and REPAs.

147.   Plaintiff were ready, willing, and able to close the APA and REPAs at any time in September prior to the insurance moratorium that went into effect on September 29, 2022.

148.   Plaintiffs' performance under the APA was temporarily suspended by the conditions imposed by Hurricane Ian.

149.   Plaintiffs were ready, willing, and able to close the APA and REPAs on October 5, 2022.

150.   In addition, the parties expressly acknowledged in their Letter of Intent that Plaintiffs would "incur significant expense in connection with its due diligence review and preparation and negotiation of the Asset Purchase Agreement."  (LOI § 6).

151.   Further, Defendants agreed to "compensate and reimburse [Plaintiffs] . . . for, all damages, costs, expenses, losses, claims, demands, liabilities and/or obligations, including, without limitation, reasonable fees and disbursements of counsel (collectively, "Damages"), to the extent arising from, relating to, or incidental to . . . (ii) any breach of or failure to perform or observe any covenant or other agreement made by any Seller Party in this Agreement." (APA § 5.2).

152.   Plaintiffs have suffered damages, incurred costs and expenses, and expended time, resources, and energy in reliance of Defendants' promise to perform their obligations under the APA and REPAs.

## COUNT IV
## Breach of Implied Covenant of Good Faith and Fair Dealing

153.   Plaintiffs restates and realleges Paragraphs 1–118 of the Complaint as if fully set forth herein.

154.   Plaintiffs, at all times, acted earnestly in the performance of its duties under the APA and REPAs in an effort to close the transaction.

155.   Plaintiffs performed all, or substantially all, of their duties required by the APA and REPAs.

156.   Defendants owed a duty to provide Plaintiffs with full and free access to Defendants' facilities and financial information under § 8.2 of the APA

157.   Defendants did not make good faith efforts to provide full and free access to Defendants' facilities and financial information, as required by § 8.2 of the APA.

158.   Defendants owed a duty use their reasonable best efforts to expeditiously close the transaction under § 8.5 of the APA.

159.   Defendants did not use their reasonable best efforts to expeditiously close the transaction, as required by § 8.5 of the APA.

160.   Defendants failed to pursue their duty to bring the parties' transaction to close by, among other things: failing to expeditiously schedule fire and licensing inspections for the Deerwood Academy sites; failing to correct inspection deficiencies in a timely manner; failing to communicate with Plaintiffs and other third parties in a timely and effective manner to take the steps necessary to bring the APA and REPA to close; failing to provide Plaintiffs with full and free access to Defendants' facilities and financial information as requested; postponing closing until the Outside Date; failing to negotiate in good faith to find a solution to the situation posed by Hurricane

Ian; and wrongfully asserting in bad faith that Plaintiffs had failed to fulfill a closing condition prior to the Outside Date.

161. Defendants, through a series of conscious and deliberate acts, failed or refused to discharge their contractual responsibilities, unjustly frustrated the purpose of the APA and REPAs, disappointed Plaintiffs' reasonable expectations of the transaction, and unfairly interfered with Plaintiffs' receipt of the contracts' benefits.

162. Defendants' breach has deprived Plaintiffs of the benefits of the APA and REPAs.

## PRAYER FOR RELIEF

Plaintiffs Pa+hfinder, LLC d/b/a Imagine Early Education and Childcare, and IC US Properties 1, LLC, respectfully request that the Court enter judgment and relief against Defendants, as follows:

A.    Judgment declaring that:

    i.    Plaintiffs' duty to deliver the purchase price by the Outside Date was temporarily suspended under the doctrine of legal impossibility or impracticality;

    ii.    Defendants did not have cause to terminate the APA and REPAs under § 7.2 of the APA;

    iii.    Defendants breached their duties and obligations under the APA and REPAs;

iv.     Defendants violated their implied covenant of good faith and fair dealing.

B.    Judgement entered in the form of:

i.     An order compelling specific performance of the APA and REPAs; and

ii.    An order awarding all damages incurred incident to Plaintiffs' efforts to compel specific performance of the transaction; or

iii.   Alternatively, damages in an amount necessary to compensate Plaintiffs for the sums reasonably expended in reliance that Defendants would work to close the APA and REPAs in good faith.

C.    Such other and further relief that this Court may deem just and equitable.

Dated: January 17, 2023

*/s/ Lauren V. Purdy*
Lauren V. Purdy (#93943)
Derek K. Mountford (#127172)
Gunster, Yoakley & Stewart, P.A.
1 Independent Drive, Suite 2300
Jacksonville, FL  32202
Telephone:  (904) 354-1980
Facsimile:   (904) 354-2170
Primary: lpurdy@gunster.com
Primary: dmountford@gunster.com
Secondary: awinsor@gunster.com
Secondary: dculmer@gunster.com

/s/ Todd A. Wind
Todd A. Wind
Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  (612) 492-7000
Facsimile:   (612) 492-7077
twind@fredlaw.com
*pro hac vice forthcoming

*Attorneys for Plaintiff Pa+hfinder, LLC d/b/a Imagine Early Education and Childcare*

ACTIVE:16493616.1